UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MONTGOMERY CARL AKERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 9-54-P-S |
| | ) |
| RON POISSON, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDED DECISION**

Montgomery Akers, an inmate at Florence Admax, U.S. Penitentiary in Florence,

Colorado, has filed a complaint in this court against four named individuals and nine Jane and/or

John Does.  I previously granted Akers leave to proceed in forma pauperis, but warned him that

his complaint would likely not survive initial screening pursuant to 28 U.S.C.A. § 1915A.  I

advised Akers that if he did not want to incur the filing fee and proceed with this litigation, he

could voluntarily terminate the case now without incurring the filing fee and the potential

dismissal of the action for failure to state a claim.  Akers has filed a response to my Order which

he calls a "motion for order of clarification" (Doc. No. 4).  His response makes it clear that he

intends to proceed with this litigation.  I deny Akers's request for "clarification."  However, I

now  recommend that this court summarily dismiss the  complaint for the reasons sent forth

below.

*Discussion*

In the earlier order I granted Akers leave to proceed in forma pauperis but I also

cautioned:

> I am now placing Akers on notice that even if he elects to proceed with
> this action his complaint is likely to be summarily dismissed as frivolous and/or
> malicious.  Akers is a serial litigator who has filed suits throughout the country.

The most recent United States Party/Case data base information indicates he has
filed over thirty-six lawsuits.  In 1996 he was banned from further pro se filings in
the United States District Court for the District of Colorado.  See, e.g., Akers v.
Sandoval, No. 94-B-2445 (D. Colo. June 20, 1995), aff'd, No. 95-1306, 1996 WL
635309, 100 F.3d 967 (10th Cir. Nov. 4, 1996).   Akers currently has a lawsuit
pending against the same FBI agent, James Keszei, in the neighboring jurisdiction
of New Hampshire.  Apparently Akers' theory is that some of the named
defendants in that lawsuit do business in New Hampshire and they have conspired
with Keszei to violate his civil rights by interfering with his business interests in
New Hampshire.  See Akers v. Keszei, Civil No. 08-cv-334-JL (D.N.H.) (Resp. to
Show Cause Order, Doc. No. 7.)   . . .

> I am pretty confident that this would be a complaint warranting dismissal
with prejudice – and further incurred expense to Akers --  if Akers decides to
proceed in this action.

(Mar. 6, 2009, Order at Doc. No. 3).

Akers has filed a "Motion for Order of Clarification of Order Granting In Forma Pauperis

Status."  (Doc. No. 4.)  In this pleading Akers argues that I am "obviously bent on finding [a]

[w]ay to dismiss the plaintiff's instant complaint [rather] than acting as an impartial Magistrate in

the furthering of justice."  (Id. at 4) (first two brackets in original). Akers goes on to recognize

that his complaint must be screened pursuant to 28 U.S.C. § 1915A.  (Id. at 5-6.)   He asks the

court to clearly identify the basis for dismissal.  (Id. at 7-8.)  Indicating that he will soon pay the

filing fee in full and that he anticipates obtaining counsel, Akers stresses:

> The plaintiff intends to zealously litigate his issues in state and federal courts until
this system of corruption is exposed and changed.  The plaintiff will use all means
at his disposal in a lawful manner to expose corruption of federal actors and their
cohorts; judges, prosecutors, agents, marshals.  The plaintiff won't stop until he's
dead and pushing tulips.

(Id. at 8-9.)  Akers has not provided anything in this pleading by way of clarifying the basis for

his suit against the named defendants.

The complaint reads in its entirety:

> Beginning in July, 2006, and continuing until present day, Defendant Ron
Piss-on, operating as a special agent, Federal Bureau of Investigation, began

stealing personal finances of the plaintiff and of his business, Discount Fuel
Providers, Inc., a Maine Corporation doing business in Old Orchard Beach, ME.

Defendant Piss-on acted on and under the orders of his supervisor, Special
Agent James Keszei, a defendant herein.

Piss-on orchestrated, managed, and supplied Discount Fuel Provider
employees with the bank account(s) and trade secrets of Plaintiff's business,
Discount Fuel Providers, in order to commit crimes at the behest of Defendant
United States Attorney, Kim I. Martin, a defendant herein.

Defendant Piss-on also reported to Defendant Keszei and Defendant
Rokusek to obtain financial information from Attorney Stephen Stein, Las Vegas,
Nevada, in order to sabotage Mr. Stein's legal practice and Plaintiff's relationship
with Mr. Stein.

The approximate amount of monetary damages cause[d] by Defendants
under 42 U.S.C. § 1985(3) is $9,000,000 (US) dollars.

(Compl. at 4-5, Doc. No. 1.)  Oddly, Akers has crossed out the portion of the complaint asking

him to swear under penalty of perjury to the truth and correctness of these allegations.  He

indicates that he will provide a separate oath under 28 U.S.C. § 1746 in a separate brief, but he

has not done so.

It is, thus, clear from Akers's complaint that his intent is to prove something akin to a 42

U.S.C. § 1985(3) conspiracy.  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct.

1955 (2007) the United States Supreme Court explained: "Federal Rule of Civil Procedure

8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled

to relief,'  in order to 'give the defendant fair notice of what the ... claim is and the grounds upon

which it rests.'" 127 S.Ct at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

Furthermore:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry
and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to
provide the  "grounds" of his "entitle[ment] to relief" requires more than labels
and conclusions, and a formulaic recitation of the elements of a cause of action
will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to
dismiss, courts "are not bound to accept as true a legal conclusion couched as a
factual allegation"). Factual allegations must be enough to raise a right to relief
above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and

3

Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller)
("[T]he pleading must contain something more ... than ... a statement of facts that
merely creates a suspicion [of] a legally cognizable right of action"), on the
assumption that all the allegations in the complaint are true (even if doubtful in
fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002);
Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not
countenance ... dismissals based on a judge's disbelief of a complaint's factual
allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (a well-pleaded complaint
may proceed even if it appears "that a recovery is very remote and unlikely").

127 S. Ct. at 1964 -65 (footnote omitted, emphasis added).  "In applying these general standards

to a § 1 [Sherman Act] claim," the Supreme Court held "that stating such a claim requires a

complaint with enough factual matter (taken as true) to suggest that an agreement was made.

Asking for plausible grounds to infer an agreement does not impose a probability requirement at

the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence of illegal agreement."  Id. at 1965 (footnote omitted, emphasis added).

On March 9, 2009, New Hampshire Magistrate Judge Muirhead issued a report and

recommendation in the New Hampshire case I referred to in my earlier order.  See Akers v.

Keszei, Civ. No. 08-cv-334-JL (D.N.H.)(Docket No. 8).  In that report, applying Heck v.

Humphrey, 512 U.S. 477 (1994), the Court concluded that, "[t]o the extent that the claims

contained in Akers' complaint would, if relief were granted thereon, undermine the convictions

or sentence pursuant to which Akers is currently confined, no cognizable claim for damages

lies."  Id. at 5.

With regards to the conspiracy claims that would not fall under such a bar, the Court

observed:

The allegations in the complaint are vague and do not include
sufficient specificity to allow me to find that they state any claim for
relief. Akers' allegations generally accuse the defendants of engaging in a
conspiracy to harm him by phoning a financial institution and attempting
to harm his relationship with that institution. Outside of actions taken in
furtherance of Akers' prosecution, which are likely barred by Heck, as

4

explained above, the complaint asserts, without support, the existence of a conspiracy designed to harm Akers in the abstract by harming his ability to conduct business and acquire wealth, abilities arguably at odds with the twenty-seven year sentence Akers has recently begun serving. Even affording the complaint liberal construction, the allegations therein are insufficient to support a conspiracy claim, as such a claim must be plead "in some detail and provide some factual basis supporting the existence of a conspiracy." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 381 (C.D. Ill. 1993). "Mere conjecture that there has been a conspiracy is not enough to state a claim." Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1206-07 (7th Cir. 1980). Akers' assertions of conspiracy are simply conclusory statements, based on conjecture, that a conspiracy exists to harm him. As these assertions are insufficient to state a claim, I recommend that the complaint, which contains only claims premised on this conspiracy, be dismissed in its entirety.

Id. at 6-7.

In a section captioned "Vexatious Litigation," the Court went on to summarize Akers's numerous cases in other districts in which he based his action on "bald assertions that the defendants to these actions have engaged in illegal conduct." Id. at 7-10. The Court noted that "it is clear that his wide spray of civil actions against many of the defendants named here approaches, if not reaches, the use of the federal courts in an abusive fashion." Id. at 10. "Accordingly," the Court continued, "Akers should consider himself warned that this Court will not wait to be inundated with numerous frivolous actions that are clearly not appropriate in this venue to prevent Akers from abusing the proper use of the resources of this Court." Id. There is little question that if this report and recommendation in New Hampshire becomes the final disposition that it would at least be Akers's third 28 U.S.C. § 1915(g) strike. Id. at 10 n.4. However, at this point in time it appears that Akers does not yet qualify for dismissal under the "three strikes" provision of 28 U.S.C. § 1915(g). See Akers v. Watts, 589 F. Supp. 2d 12, 16 (D.D.C. 2008).

5

Nevertheless, Akers's complaint must be dismissed with prejudice as it fails to state a claim for conspiracy to violate any of his civil rights.   The conspiracy claim has no facts from which this Court could draw a plausible inference that these defendants agreed to subject Akers to some financial loss in Maine.   In fact, the crux of his complaint, that Ron Poisson, acting on the instructions of the FBI and/or other federal actors, provided the employees of Akers's business, Discount Fuel Providers, Inc., with the trade secrets and bank accounts of the business makes absolutely no sense.   If Akers has a business in Maine,[1] it is hard to understand how providing the employees (presumably his own employees) with trade secrets and bank accounts of that business would create a plausible inference that these federal defendants had conspired with someone named Ron Poisson from Old Orchard Beach, Maine to deprive Akers of $9,000,000.00.   The allegations are disjointed and devoid of factual background from which plausible inferences, no matter how unlikely, could even begin to be made.   There are simply no facts to give these conclusory allegations any meaning and thus to create a plausible inference that these defendants have conspired in Maine to deprive Akers of his civil rights.   His complaint is doubly suspect because of his repeated filings throughout the country of the same kinds of vague allegations naming some of these same defendants.   While Akers is a pro se litigant whose pleadings must be liberally construed, based upon his most recent filing in this court and his numerous cases in other jurisdictions, it is obvious that he is no stranger to litigation.   He can clearly articulate his objections to court rulings and his knowledge of court procedure.   (See Doc. No. 4.)  If Akers truly had something meaningful to say about a conspiracy to deprive him of his

---

[1]        While certainly not an exhaustive search, a quick internet search of the Maine Secretary of State's website under the corporate name, Discount Fuel Providers, Inc. revealed the following entry: **Found 0 entities for query: Discount Fuel Providers, Inc. in category ALL CATEGORIES.**  The Verizon White Pages for the York County area list thirty-five entries under Poisson, none of them Ron or Ronald.  There are no entries under the alternate spelling provided by Akers.  There is no Discount Fuel Providers, Inc. in the Old Orchard Beach phone directory.

civil rights centered in Maine, I am more than satisfied that he could and would have pled it in a meaningful way.

### Conclusion

Based upon the foregoing I recommend that Akers's complaint be dismissed with prejudice as it fails to state a claim for which relief can be granted.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 24, 2009